592 S.E.2d 646

**Rodney D. LUCAS, Plaintiff Below, Appellant**

v.

**Brenda K. LUCAS, Defendant Below, Appellee**

No. 31341.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 18, 2003.

Decided Dec. 5, 2003.

George B. Vieweg, Shawn D. Bayless, Lester, Vieweg & Bayless, Charleston, West Virginia, Attorney for the Appellant.

Charles R. Webb, Giatras & Webb, Charleston, West Virginia, Attorney for the Appellee.

ALBRIGHT, Justice:

This is an appeal by Rodney D. Lucas (hereinafter "Appellant") from an order of the Circuit Court of Kanawha County affirming a decision by the family court reducing an award of spousal support from $850.00 to $700.00 per month. The Appellant contends that the family court and lower court erred in failing to terminate the Appellant's support obligation completely based upon findings that a de facto marriage exists between the Appellant's ex-wife, Brenda K. Lucas (hereinafter "Appellee") and a third-party, Mr. David Davis. Upon thorough review of the record, briefs, and arguments of counsel, we affirm the determination of the lower court in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. Factual and Procedural History

On March 27, 1997, a divorce was granted to the Appellant and the Appellee. The Appellant was ordered to pay $850.00 monthly in spousal support. On May 10, 2000, the Appellant filed a petition for termination of spousal support alleging that since October 1999, a de facto marriage had existed between the Appellee and a third-party, Mr. David Davis. Family law master Robert M. Montgomery conducted hearings, during which the Appellee admitted that she had resided with Mr. Davis in Huntington, West Virginia, for a period of over two years; maintained a conjugal relationship with him; used his residence as her mailing address; shared household duties; and jointly owned several vehicles with Mr. Davis. The Appellee further indicated that she paid Mr. Davis $300.00 monthly toward shared household expenses.

Testimony was also received concerning alterations in the annual income of both parties since the divorce. The Appellant and the Appellee each filed financial disclosures. At the time of separation in 1995, the financial evidence indicated that the Appellant's gross income was $128,320.00. By 1999, the Appellant's gross income had decreased to $116,779.00. The Appellee's income in 1999 was $31,000.00.

By order dated October 10, 2001, the family law master found that a de facto marriage, as defined in West Virginia Code § 48–5–707 (2001), existed between the Appellee and Mr. Davis and that the evidence justified a reduction of support from $850.00 monthly to $700.00 monthly, representing a seventeen and one-half percent reduction. The family law master reasoned that the de facto marriage "has provided certain financial advantages for the [Appellee] such as relieving her from the payment of rent and utilities, except telephone, as well as reducing her costs for groceries and food expenses as well as the shared vacations and other conviences [sic]." The family law master further found that "[t]here still exists a significant disparity in income from the time the parties hereto separated in November 1995 until the present but the [Appellant's] income has decreased and the [Appellee's] income has increased." Regarding commingling of assets, the family law master found that the Appellee and Mr. Davis "have maintained the majority of their assets separately and in their respective separate names." The family law master also referenced the Appellee's stress, thyroid, and stomach ailments.

Family Court Judge D. Mark Snyder[1] reviewed the Appellant's petition for termination of support, and by order dated June 25, 2002, adopted the family law master's recommended findings that the Appellant's support obligation should be reduced to $700.00 monthly. The Appellant appealed the family court determination to the lower court, and by order dated October 22, 2002, the lower court denied the petition without a hearing. The Appellant now appeals to this Court, contending that the lower tribunals erred by failing to completely terminate the Appellant's support obligation where a de facto marriage existed between Appellee and a third party; failing to make the reduction retroactive to the date when the Appellee was served with the petition for termination of support; and failing to award attorney fees to the Appellant.

## II. Standard of Review

In syllabus point one of *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995), this Court explained as follows:

> In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

In view of the changes to the family law master system, we also hold that in reviewing challenges to findings made by a family court judge that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review. Similarly, in the syllabus of *Nichols v. Nichols,* 160 W.Va. 514, 236 S.E.2d 36 (1977), this Court explained that "[q]uestions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Based upon this standard of review, we address the Appellant's allegations of error in this matter.

1. Pursuant to West Virginia Code § 51–2A–23(a) (2001) (Supp.2003), the family law master system ceased to function on January 1, 2002, at which time the new family court judges system went into effect.

## III. Discussion

### A. Discretionary Determination Regarding Support Reduction or Termination

West Virginia Code § 48–5–707(a)(1) provides, in part, as follows: "In the discretion of the court, an award of spousal support may be reduced or terminated upon specific written findings by the court that since the granting of a divorce and the award of spousal support a de facto marriage has existed between the spousal support payee and another person."[2] The Appellant contends that the family court erred in failing to completely terminate the Appellant's support obligation based upon the finding that a de facto marriage exists between the Appellee and a third party. The Appellant's argument is premised upon the assertion that the legislature intended this statute to prevent a payee ex-spouse from continuing to obtain assets from a payor ex-spouse after entering into a de facto marriage.

2. The full text of West Virginia Code § 48–5–707 provides as follows:

(a)(1) In the discretion of the court, an award of spousal support may be reduced or terminated upon specific written findings by the court that since the granting of a divorce and the award of spousal support a de facto marriage has existed between the spousal support payee and another person.

(2) In determining whether an existing award of spousal support should be reduced or terminated because of an alleged de facto marriage between a payee and another person, the court should elicit the nature and extent of the relationship in question. The court should give consideration, without limitation, to circumstances such as the following in determining the relationship of an ex-spouse to another person:

(A) The extent to which the ex-spouse and the other person have held themselves out as a married couple by engaging in conduct such as using the same last name, using a common mailing address, referring to each other in terms such as "my husband" or "my wife", or otherwise conducting themselves in a manner that evidences a stable marriage-like relationship;

(B) The period of time that the ex-spouse has resided with another person not related by consanguinity or affinity in a permanent place of abode;

(C) The duration and circumstances under which the ex-spouse has maintained a continuing conjugal relationship with the other person;

(D) The extent to which the ex-spouse and the other person have pooled their assets or income or otherwise exhibited financial interdependence;

(E) The extent to which the ex-spouse or the other person has supported the other, in whole or in part;

(F) The extent to which the ex-spouse or the other person has performed valuable services for the other;

(G) The extent to which the ex-spouse or the other person has performed valuable services for the other's company or employer;

(H) Whether the ex-spouse and the other person have worked together to create or enhance anything of value;

(I) Whether the ex-spouse and the other person have jointly contributed to the purchase of any real or personal property;

(J) Evidence in support of a claim that the ex-spouse and the other person have an express agreement regarding property sharing or support; or

(K) Evidence in support of a claim that the ex-spouse and the other person have an implied agreement regarding property sharing or support.

(3) On the issue of whether spousal support should be reduced or terminated under this subsection, the burden is on the payor to prove by a preponderance of the evidence that a de facto marriage exists. If the court finds that the payor has failed to meet burden of proof on the issue, the court may award reasonable attorney's fees to a payee who prevails in an action that sought to reduce or terminate spousal support on the ground that a de facto marriage exists.

(4) The court shall order that a reduction or termination of spousal support is retroactive to the date of service of the petition on the payee, unless the court finds that reimbursement of amounts already paid would cause an undue hardship on the payee.

(5) An award of rehabilitative spousal support shall not be reduced or terminated because of the existence of a de facto marriage between the spousal support payee and another person.

(6) An award of spousal support in gross shall not be reduced or terminated because of the existence of a de facto marriage between the spousal support payee and another person.

(7) An award of spousal support shall not be reduced or terminated under the provisions of this subsection for conduct by a spousal support payee that occurred before the first day of October, one thousand nine hundred ninety-nine.

(b) Nothing in this subsection shall be construed to abrogate the requirement that every marriage in this state be solemnized under a license or construed to recognize a common law marriage as valid.

1. Cohabitation and Modification Prior
to Enactment of West Virginia
Code § 48–5–707

Prior to the enactment of West Virginia Code § 48–5–707, this Court had addressed the question of support reduction based upon the recipient's cohabitation and had formulated express principles controlling the issue. In *Wight v. Wight,* 168 W.Va. 334, 284 S.E.2d 625 (1981), for instance, the appellant argued that the appellee's cohabitation should relieve the appellant from the obligation of continuing to pay support. This Court examined the governing statute at that time, West Virginia Code § 48–2–15 (1980), and concluded that the statute "makes no reference to the conduct of the parties after the granting of a divorce. Rather it makes their financial circumstances and needs and the requirements of justice the factors to be considered in determining whether an alimony award should be modified." 168 W.Va. at 337, 284 S.E.2d at 626–27. Such rationale was reiterated in *Judith R. v. Hey,* 185 W.Va. 117, 405 S.E.2d 447 (1990), in which this Court concluded that "an ex-wife's cohabitation with an adult male not her husband does not constitute grounds for termination or reduction of alimony award absent showing of change in financial condition of ex-wife by reason of contribution by the person with whom she cohabits." 185 W.Va. at 121, 405 S.E.2d at 451; *see also McVay v. McVay,* 189 W.Va. 197, 429 S.E.2d 239 (1993).

In syllabus point four of *Dalton v. Dalton,* 207 W.Va. 551, 534 S.E.2d 747 (2000), this Court explained: "The payment of alimony mandated in a divorce order does not automatically terminate upon the mere cohabitation of the parties to the divorce order, but remains in full force and effect, and the alimony obligation continues as defined in the divorce order." Syllabus point five continued:

> The post-divorce cohabitation of former spouses is one factor to be considered in determining whether an obligor former spouse has fulfilled his or her support obligations as required by the parties' divorce decree. The inquiry is whether and to what extent the obligor former spouse contributed financially to the support of the obligee former spouse and/or the parties' child(ren) during the parties' cohabitation. Any monetary contribution made by the obligor former spouse to the obligee former spouse for the support of the obligee former spouse and/or the parties' child(ren) constitutes a credit toward the fulfillment of the obligor former spouse's court-ordered support obligations.

Among this Court's general standards regarding modification of spousal support obligations, we have consistently maintained that "the primary standard to determine whether or not a trial court should modify an order awarding alimony is a substantial change of circumstances." *Zirkle v. Zirkle,* 172 W.Va. 211, 217, 304 S.E.2d 664, 671 (1983); *see also Adkins v. Adkins,* 208 W.Va. 364, 540 S.E.2d 581 (2000); *Luff v. Luff,* 174 W.Va. 734, 329 S.E.2d 100 (1985). This Court has previously noted the difficulty in precisely defining the phrase "substantial change in circumstances" but has recognized that it "most often refers to circumstances which have substantially impacted upon the financial resources and economic needs of the parties subsequent to their divorce." *Clay v. Clay,* 182 W.Va. 414, 422, 388 S.E.2d 288, 296 (1989). In determining whether there has been a substantial change of circumstances, we have explained that the reviewing court must "consider the financial needs of the parties, their incomes and income earning abilities and their estates and the income produced by their estates in determining the amount of alimony to be awarded in a modification proceeding." Syl. Pt. 2, in part, *Yanero v. Yanero,* 171 W.Va. 88, 297 S.E.2d 863 (1982).

2. Legislative Change of Policy Embodied
in West Virginia Code § 48–5–707

By adopting West Virginia Code § 48–5–707, the legislature has, in practical terms, substantially altered the rules established over many decades by this Court regarding the effect of cohabitation on the issue of continued spousal support. Under the provisions of that statute, the legislature has required that where a de facto marriage has been found to exist, the trial courts, contrary to the past practice regarding cohabitation, must, upon proper request, now consider the effect of that de facto marriage upon the

financial circumstances of the parties and the continuing requirement of spousal support. With the advent of West Virginia Code § 48-5-707, courts are provided with the specific discretion to reduce or terminate spousal support where certain conditions indicating a de facto marriage are found to exist. The statute is essentially a unique and particularized form of a modification statute, generally premised upon the change in circumstances occasioned by the de facto marriage. Pursuant to the statute, however, neither reduction nor termination is mandatory. The discretion rests with the court, and, as such, will not be altered by this Court unless an abuse of discretion has occurred.

In exercising such discretion, the courts are guided by the factors enunciated by the statute, as well as this State's prior legislative and common law pronouncements regarding calculation of alimony and subsequent possible modification thereof, as briefly summarized above. The factors itemized by the statute include various components of financial inquiry, including pooling of assets or income, financial interdependence, performance of valuable services, joint contribution to purchase of real or personal property, and agreements regarding living expenses. *See* W. Va.Code § 48-5-707(a)(2).

### a. Procedures Employed By Other Jurisdictions

In this Court's evaluation of the operation and application of this statute, it is also instructive to examine the statutory and common law principles which have evolved in other jurisdictions on this issue. The specific question of whether a material change in circumstances has been created by a de facto marriage has been extensively examined, premised upon either a guiding statute similar to the West Virginia statute or simply based upon evolving case law. In California, for example, the legislature created a "rebuttable presumption, affecting the burden of proof, of decreased need for spousal support

if the supported party is cohabiting with a person of the opposite sex." Cal.Civ.Code § 4323(a)(1) (1993). In *In re Marriage of Leib*, 80 Cal.App.3d 629, 145 Cal.Rptr. 763 (1978), the court explained that "the Legislature created the presumption ... based on thinking that cohabitation establishes a status for the benefit of the supported spouse and such status therefore creates a change of circumstances so tied in with the payment of spousal support as to be significant enough by itself to require a re-examination of whether such need for support continues in such a way that it still should be charged to the prior spouse." 145 Cal.Rptr. at 771; *see also In re Marriage of Bower*, 96 Cal.App.4th 893, 117 Cal.Rptr.2d 520, 525 (2002) (holding that "[a] material change of circumstances may occur if the supported spouse alters his or her lifestyle and cohabits with a person of the opposite sex").

Similarly, a Connecticut statute, General Statutes § 46b-86(b) (1991) provides that cohabitation may result in suspension, reduction, or termination of alimony if "living arrangements cause such a change of circumstances as to alter the financial needs of that party." The Connecticut courts have interpreted this statute to impose upon the movant a two-pronged burden: first, the movant must prove that the party receiving alimony was living with another person and second, the movant must prove that the living arrangement caused a change in circumstances altering the financial needs of the support recipient. *D'Ascanio v. D'Ascanio*, 237 Conn. 481, 678 A.2d 469, 471 (1996).[3]

The Oklahoma legislature, through Okla. St. Ann 43 § 134 (1992), provides that cohabitation shall be grounds for reduction or termination of alimony "upon proof of substantial change of circumstances of either party to the divorce relating to need for support or ability to support." The Oklahoma courts have recognized that "[t]he *raison d'etre* of [the statute] is not to regulate morality, but

---

**3.** Courts have also generally recognized that cohabitation may not always alter the financial need of the spousal support recipient. *See Smith v. Smith*, 849 P.2d 1097 (Okla.App.1992) (holding that where no showing was made that wife's expenses decreased during cohabitation, alimony should not be reduced); *In re Marriage of Dwyer*,

825 P.2d 1018 (Colo.App.1991) (finding no error in continuation of alimony during cohabitation, in light of evidence that payee was still in financial need); *Mitchell v. Mitchell*, 418 A.2d 1140 (Me.1980) (upholding finding that wife's financial conditions had not changed through cohabitation).

rather to regulate support maintenance when the *need* for continued support has diminished or vanished." *Roberts v. Roberts,* 657 P.2d 153, 154 (Okla.1983).[4] The concurring opinion in *Roberts* also addressed the importance of such a statute in domestic relations law, noting that prior to the enactment of the statute, "cohabiting recipients found that it was financially detrimental for them to marry (and thus lose support alimony), while those who married were automatically (with certain exceptions) removed from recipient status." 657 P.2d at 155 (Barnes, C.J., concurring). Subsequent to the enactment of the statute, "the law is equally and equitably applied to both those recipients who marry and those who do not. The law no longer serves as an impetus to discourage or encourage marriage of support recipients, but relies solely, in both cases on true financial need of the parties." *Id.*

Even where the cohabitation/de facto marriage issue is not governed by statute, the case law of other jurisdictions casts the decision in terms of the precise *need* of the recipient spouse. *See Smith v. Mangum,* 155 Ariz. 448, 747 P.2d 609, 612 (1987) (holding that the "focal point" of the court's inquiry must be upon the recipient's need for continued support). The burden of proof to establish the changed financial circumstances remains upon the payor, as the party petitioning for modification.

4. At the time of the *Roberts* decision, the statute regarding cohabitation as grounds for reduction or termination of alimony was located in 12 O.S. *Supp.1979* § 1289(D). Although slight alterations were made to the statute in 43 § 134, those changes do not affect the discussion of general principles in *Roberts.*

5. The list of factors to be considered in the determination of an alimony award were previously listed in West Virginia Code § 48–2–16 (1999). That section was transferred in its entirety to West Virginia Code § 48–6–301 when the domestic relations legislative enactments were redesigned in 2001. The main difference between the 1999 and 2001 versions is the substitution of the phrase "spousal support" for the term "alimony." The factors listed in § 48–6–301 include the following:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

### b. Conclusions Regarding Application of the West Virginia Statute

Having examined both West Virginia precedent on general modification and cohabitation issues, as well as other jurisdictions' specific experiences with the issue of modification based upon cohabitation/de facto marriage, we hold that under West Virginia Code § 48–5–707, the essential question is whether the de facto marriage, the circumstances of which having been fully developed through evaluation of the factors enunciated in the statute, warrants the reduction or termination of the ex-spouse payor's financial obligations by creating a substantial change in circumstances altering the recipient's need for spousal support. In assessing this issue, we must remain mindful of the admonition that "[t]he sole purpose of an award of alimony is to provide for the support of a former spouse." Syl. Pt. 3, in part, *Clay,* 182 W.Va. at 415, 388 S.E.2d at 289.

In fixing the amount of spousal support, if any, to be ordered where modification is requested based upon West Virginia Code § 48–5–707, the courts must also be guided by the specific list of factors set forth by the West Virginia Legislature for determining spousal support in the original instance, pursuant to West Virginia Code § 48–6–301 (2001).[5] Because of the poten-

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of article seven of this chapter, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support, child support or separate maintenance: Provided, That for the purposes of determining a spouse's ability to pay spousal support, the court may not consider the income generated by property allocated to the payor spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;

tially unstable nature of a de facto marriage, we also recognize that it would rarely be an abuse of discretion for a court to preserve its future options by granting a nominal alimony award. *See Smith*, 747 P.2d at 611 (recognizing that unlike remarriage, cohabitation does not result in the accrual of property rights or legal support obligations). We further hold, consistent with the tenor of the statute, that the burden of proof to establish changed financial circumstances justifying reduction or termination of spousal support under West Virginia Code § 48–5–707 remains upon the payor, as the party petitioning for modification. *See* W. Va.Code § 48–5–707(a)(3).

■■■■ Where a finding of a de facto marriage is made under West Virginia Code § 48–5–707, a factual investigation into the financial circumstances, income, and expenses of the support recipient, including contributions in money or in kind by the cohabitant, is necessary in order to determine the recipient's continuing need, if any, for support. Based upon such financial evaluation, a comparison should be made between the financial status and need of the parties to the divorce which originally justified a spousal support award and the financial status and need of those two parties at the time the petition for modification is filed, taking into account the effects of any assistance provided as a consequence of the de facto marriage. The results of that comparison then dictate the issue of reduction or termination of spousal support.

■■■ In the case sub judice, the record reveals that the family law master was properly presented with financial disclosures from both the Appellant and the Appellee. However, it does not appear that the family law master thoroughly evaluated the financial resources available to the Appellee through the de facto marriage, her continued need for alimony of a particular amount, or a comparison between the Appellee's financial status originally justifying a spousal support award and her financial status as the de facto spouse of Mr. Davis. Since the record does not disclose that the family law master, family court judge, or circuit court seriously entertained examination of these factors,[6] we deem each of the respective orders to be arbitrary and an abuse of discretion.

Based upon the foregoing, we reverse the determination of the lower court regarding reduction in spousal support and remand this matter for further evaluation consistent with the principles expressed in this opinion. On remand, the lower court's inquiry should focus upon the Appellee's continued need for support as revealed through a particularized comparison of the financial circumstances found to warrant an $850.00 spousal support award and those currently existing.

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) Whether either party has foregone or postponed economic, education or employment opportunities during the course of the marriage;

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking spousal support, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(11) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;

(12) The anticipated expense of obtaining the education and training described in subdivision (10) above;

(13) The costs of educating minor children;

(14) The costs of providing health care for each of the parties and their minor children;

(15) The tax consequences to each party;

(16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(17) The financial need of each party;

(18) The legal obligations of each party to support himself or herself and to support any other person;

(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and

(20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support, child support or separate maintenance.

6. The family law master's order fails to provide any indication of the rationale for choosing the specific monetary amount of $150.00 for the reduction.

## B.   Retroactivity of Reduction

Pursuant to West Virginia Code § 48–5–707(a)(4), "[t]he court shall order that a reduction or termination of spousal support is retroactive to the date of service of the petition on the payee, unless the court finds that reimbursement of amounts already paid would cause an undue hardship on the payee." The Appellant contends that the family court erred in failing to make the reduction in spousal support retroactive to May 10, 2000, the date upon which the Appellee was served with the petition for termination of support. Instead, the alteration was made retroactive to February 1, 2001. The family law master explained: "The effective date of the Order and reduction in alimony will be February 1, 2001 as the respondent, Brenda K. Lucas caused the hearing for February 5, 2001 to be continued so she might vacation in Costa Rica."

On remand, if circumstances are found to justify a reduction or termination of the Appellant's support obligations, the order should comply with the statutory mandate regarding retroactivity and should be retroactive to May 10, 2000, unless the Appellee submits evidence persuading the court that reimbursement of support payments would cause an undue hardship on her.

## C.   Attorney Fees

The Appellant also contends that the family court erred in failing to award him attorney fees. West Virginia Code § 48–5–707(a)(3) provides as follows:

> On the issue of whether spousal support should be reduced or terminated under this subsection, the burden is on the payor to prove by a preponderance of the evidence that a de facto marriage exists. If the court finds that the payor has failed to meet burden of proof on the issue, the court may award reasonable attorney's fees to a payee who prevails in an action that sought to reduce or terminate spousal support on the ground that a de facto marriage exists.

Despite the obvious language of the statute that attorney fees may be awarded to the payee under certain circumstances, the Appellant contends that he should also be entitled to an attorney fee award. The family law master declined to award attorney fees to either party, "as each made good faith arguments herein."

■ Our review of the enactment leads to the conclusion that West Virginia Code § 48–5–707(a)(3) permits only the recipient of spousal support to be eligible for an award of attorney fees in an action seeking to reduce or terminate spousal support payments based upon the cohabitation of the recipient. The payor of the spousal support shall in no event be entitled to an attorney fee award. We therefore affirm the decision of the lower court to refuse an award of attorney fees to the Appellant.

## IV.   Conclusion

Accordingly, the final order of the Circuit Court of Kanawha County is affirmed in part, reversed in part, and remanded for the purpose of reassessing the financial circumstances regarding the continued need for spousal support, as outlined above.

Affirmed in part, reversed in part, and remanded with directions.