## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Connie Flannagan,**
**Petitioner Below, Petitioner**

**vs) No. 14-0697** (Monroe County 10-D-34)

**Thomas Flannagan,**
**Respondent Below, Respondent**

**FILED**

May 15, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Connie Flannagan, by counsel Charles R. Webb, appeals the order of the Circuit Court of Monroe County, entered on June 19, 2014, that affirmed the order of the Family Court of Monroe County in the parties' divorce action. Respondent Thomas Flannagan, by counsel Michael R. Whitt, filed a response. On appeal, petitioner challenges (1) the award of spousal support in an amount that decreased after the first year and (2) the requirement that she pay COBRA premiums and copayments under respondent's health insurance.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in 1983 and separated in January of 2010. At the time of their separation, petitioner was fifty-five years old and respondent was fifty-six years old. They have no children. On February 25, 2010, petitioner, who is disabled, filed a petition for separate maintenance, primarily so that the parties could stay married, which would allow her to remain on respondent's health insurance until she reached the age at which she would qualify for Medicare. At the time, respondent was in agreement, and the parties entered into an agreed temporary order allowing petitioner to remain in the marital residence while it was being sold and requiring respondent to pay her $2,800 per month in support. The parties characterized the support as equitable distribution so that there would be no tax consequences to petitioner.

At some point, respondent changed his mind about the agreement. In February of 2013, with leave of the court, respondent filed an amended answer to the petition for separate maintenance and a counterclaim seeking a divorce. Petitioner responded to the counterclaim, but could not deny that the parties had lived separate and apart for a year. In September of 2013, petitioner filed a motion for *ex parte* relief alleging that, as a result of respondent's change of employment, her health insurance was terminated or otherwise interrupted, causing the delay or

1

cancellation of multiple scheduled surgeries and out-of-pocket medical expenses totaling about $1,000 per month. The family court entered an *ex parte* order granting the immediate re-initiation of COBRA[1] benefits under respondent's previous employment or requiring initiation of new insurance under respondent's new employment in order for petitioner to be covered.

The family court conducted hearings on October 15, 2013, and February 11, 2014, and entered its final order on March 4, 2014. Therein, the family court noted that the only issue was petitioner's spousal support award, which was complicated by the companion issue of ensuring that petitioner have health insurance.[2] The family court accepted evidence mainly through the proffers of counsel, neither of whom objected. According to the findings of the family court, respondent earns approximately $120,000 annually, and petitioner is unable to work due to a combination of severe impairments.[3] The family court found that petitioner has no work history and no income.

In relevant part, the family court also found that petitioner would be eligible to remain with the same health insurance provider through COBRA after the divorce is final, but the exact cost and duration of that coverage were unknown to the parties; that the best estimate of the cost was $900 per month, as estimated by respondent's counsel[4]; that respondent's counsel stated that with the recent Medicaid expansion, petitioner could receive health insurance while having an income of $1,388 per month, and respondent agreed to pay that amount in alimony; that the out-of-pocket cost of petitioner's health insurance was approximately $650 per month, however, the cost for her uncovered medical expenses in 2013, an especially bad medical year for her, was about $30,000; and that the out-of-pocket expenses under Medicaid are negligible compared to those under petitioner's current insurance.

The family court also found that petitioner objected to an award of only $1,388 per month given respondent's income, and instead, requested $4,356 per month, plus $900 per month for COBRA insurance premiums, for a total of $5,256 per month until COBRA coverage is no longer available, then $1,388 per month from that point forward; that the nineteen factors set forth in West Virginia Code § 48-6-301 do not address how to provide petitioner with sufficient income, while at the same time, ensuring that her access to the best available health insurance is

---

[1] The health benefit provisions of the Consolidated Omnibus Budget Reconciliation Act (COBRA), 29 U.S.C. § 1161, amend the Employee Retirement Income Security Act, the Internal Revenue Code, and the Public Health Service Act to require group health plans to provide a temporary continuation of group health coverage that otherwise might be terminated.

[2] The parties' property had already been equitably divided.

[3] Petitioner suffers from diabetes, DeQuervain's tenosynovitis (a condition affecting the tendons of wrist), and ankylosing spondylitis (a type of arthritis affecting the spine). According to her brief, the latter two conditions are exacerbated by the diabetes and have required her to use a wheelchair.

[4] According to the transcript from the appeal hearing in circuit court, respondent's counsel acknowledged that the $900 per month estimation was incorrect, and that the actual cost was about $450 per month.

2

not compromised; that the issue is further complicated by the fact that neither party could unequivocally provide the duration of the COBRA coverage after the divorce or how much it will cost; and that, based on the proffers of counsel, the family court was of the opinion that respondent should continue with paying petitioner $2,800 per month, plus the cost of the COBRA premiums and copays for one year, and then the award should be reduced to $1,388 per month ongoing, which would give the parties a year to put in place the necessary mechanisms to obtain Medicaid coverage for petitioner.

By order entered on March 5, 2014, family court granted the divorce and ordered respondent to pay spousal support in the amount of $4,350 per month[5] effective April 1, 2014, until April 1, 2015, and $1,388 per month thereafter. The family court ordered that petitioner be responsible for paying the COBRA premiums and copays. Petitioner appealed to the circuit court. After a hearing on June 2, 2014, the circuit court entered an order on June 19, 2014, affirming the family court's order in its entirety. Petitioner now appeals to this Court.

Before we begin our discussion of petitioner's multiple assignments of error, we must address the family court's finding regarding petitioner's income, or lack thereof. On appeal, respondent represents that petitioner failed to disclose to the family court that she receives a monthly annuity payment of approximately $2,000 as the result of a personal injury settlement. Petitioner admits that the confidential settlement was the result of her falling on her property in 2008 -- two years prior to the parties' separation -- due to holes left by a contractor who was building her home. Petitioner states that she was admonished by the circuit court in her personal injury case to never disclose the settlement to anyone. Petitioner states that the settlement did not occur until the pendency of the divorce case, and by all accounts, it appears that she complied with the circuit court's directive to keep the settlement confidential.

The settlement was referenced during the February 11, 2014, family court hearing; however, the discussion was very general in nature and centered more on whether the settlement could be disclosed, rather than the specifics of the settlement or how it might affect petitioner's spousal support award. It does not appear that the actual written settlement agreement was admitted into evidence, or even presented by either party. Additionally, there are no findings whatsoever in the family court's or the circuit court's orders regarding petitioner's personal injury settlement. However, during the appeal hearing before the circuit court, petitioner's counsel stated that petitioner receives $2,000 per month as a result of the settlement, which, according to petitioner, has rendered her ineligible for Medicaid. During the hearing, respondent's counsel challenged petitioner's claim that she was Medicaid ineligible, stating that she stipulated to her eligibility before the family court. Apparently recognizing that the facts as they existed at the time of the family court proceedings had possibly changed, the circuit court asked the parties if they wanted the matter remanded to the family court. Petitioner's counsel advised the circuit court that he preferred to have the matter remanded. Respondent's counsel argued that the support award as ordered by the family court for the first year was excessive; nonetheless, he reluctantly asked the circuit court to affirm the family court's order rather than

---

[5] This amount represents to the total of the $2,800 per month award as previously ordered, the estimated monthly COBRA premium in the amount of $900, and the approximated monthly cost of petitioner's copays in the amount of $650.

3

remand the matter. The circuit court noted that "the factual background keeps changing as [the case] moves along. It's different now than it was whenever [the parties] had the family court hearing." However, at the close of the appeal hearing, the circuit court ruled that the family court did not abuse its discretion based on the record that the family court had before it at that time.

In Syllabus Points 2 and 3 of *Lucas v. Lucas,* 215 W.Va. 1, 592 S.E.2d 646 (2003), we set forth the following standards of review applicable to the present case:

> 2. In reviewing challenges to findings made by a family court judge that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

> 3. "Questions relating to alimony and to the maintenance and custody of the children are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977).

We turn now to petitioner's assignments of error. First, petitioner argues that the family court erred by allowing the final hearing to be partially conducted by proffer.[6] Petitioner argues that the family court was addressing a twenty-seven-year marriage that "required the introduction of substantial evidence on the issue of alimony[,]" but "short circuited" the hearing by allowing counsel to proffer their evidence and arguments. Petitioner argues that she needed the opportunity to present witnesses and evidence that would rebut the representations of both respondent and his counsel.

We reject petitioner's argument for a number of reasons, not the least of which is that petitioner did not object to the family court conducting its hearings in the manner in which it did. *See* Syl. Pt. 3, in part, *State v. Asbury,* 187 W.Va. 87, 415 S.E.2d 891 (1992) (holding that "[f]ailure to make timely and proper objection . . . constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court") (citations omitted). Additionally, petitioner offers no justification for her failure to present whatever witnesses and documents she believed were necessary to advance her position before the family court. Finally, given that both parties engaged in, and benefitted from, the same method of presenting their respective cases, it seems patently unfair at this juncture to second-guess the family court simply because petitioner disagrees with the result.

Petitioner's second assignment of error is that respondent misrepresented material facts, including petitioner's eligibility for Medicaid. Petitioner argues that petitioner is now no longer

---

[6] Both petitioner and respondent testified at the February 11, 2014, hearing before the family court.

eligible for Medicaid given the "revelation" relating to her $2,000 per month annuity payment she receives as a result of the settlement. This argument is without merit. The record from the family court reveals that petitioner acknowledged at the final hearing that she would be eligible for Medicaid so long as she did not receive more than $1,388 per month from respondent. We fail to see how respondent misrepresented any facts related to petitioner's eligibility. Rather, it was petitioner's own failure to accurately disclose her financial situation that has apparently rendered her ineligible for Medicaid. Moreover, petitioner's failure to disclose her annuity payment may have resulted in her being awarded a much higher support award than what she was entitled to receive.

In petitioner's third and sixth assignments of error, she challenges the family court's findings with respect to cost and duration of COBRA coverage for petitioner. As to the cost of COBRA coverage, respondent acknowledges that his estimate of $900 per month was incorrect, and that the accurate cost is approximately half that amount. Petitioner objects to the family court requiring her to pay this elevated cost for the premium; however, petitioner fails to acknowledge that the family court relied on respondent's estimated premium of $900 per month to calculate petitioner's $4,350 per month support award for the first year after the divorce. Stated another way, respondent is essentially paying petitioner twice the amount necessary for her to then pay for her COBRA coverage. Because petitioner actually benefitted from respondent's error, we see no grounds to disturb the family court's finding on the cost of COBRA coverage.

We are confused by petitioner's argument that the family court erred with respect to duration of COBRA coverage ordered. Petitioner states that the family court ordered that she receive twenty-four months of coverage when thirty-six months are available. The record demonstrates that petitioner was awarded permanent spousal support and *at least* one year of COBRA coverage. Accordingly, petitioner's argument is without merit.

Fourth, petitioner argues that the family court erred by not granting her permanent alimony. Upon our review of the plain language of the family court's March 5, 2014, order, the family court awarded petitioner an award of $4,350 per month for one year and $1,338 per month thereafter. Petitioner *was* granted permanent alimony. Accordingly, we must reject petitioner's fourth assignment of error.

Fifth, petitioner argues that the family court erred by entering a final order when the case was not completed. At the conclusion of the February 11, 2014, hearing before the family court, the court stated that it could make a decision based on what it had received so far, but gave the parties the opportunity to request an additional hearing if deemed necessary. Petitioner's counsel stated that he was unable to make such a decision at that point, to which the court stated that he did not have to. However, after waiting almost three weeks with no request for further hearing from petitioner's counsel, the family court entered its final order. Petitioner argues in this appeal that she intended to ask for an additional hearing to rebut respondent's claims, but was denied that chance. As neither party submitted additional argument or requested an additional hearing after the hearing on February 11, 2014, we find no error in the family court entering its order based on the record the parties had created by that time.

5

Petitioner's final assignment of error is that the circuit court erred by failing to remand the matter when it recognized that there was a minimal evidentiary record before the family court. As we noted above, the circuit court asked the parties if they wished to have the matter remanded in light of petitioner's untimely disclosure of her personal injury settlement and her counsel's sudden desire to call additional witnesses. Given that the parties had two days of hearing before the family court, and petitioner had ample opportunity between the final day of hearing and the entry of the family court's order to request an additional hearing and did not, we find no error in the circuit court's exercise of its discretion by deciding the matter instead of remanding it. The circuit court acted well within its discretion in reviewing the matter based on the record that the family court had before it. Based on the evidence as of the final hearing on February 11, 2014, the circuit court did not err in affirming the family court's order as there was no abuse of discretion by the family court.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 15, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISSENTING:**

Justice Robin Jean Davis
Justice Brent D. Benjamin