# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Michael Clayton Doss,**
**Respondent Below, Petitioner**

**vs.)  No. 18-0345** (Pocahontas County 16-D-03)

**Melissa Dawn Hill-Doss,**
**Petitioner Below, Respondent**

**FILED**

**September 13, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael Clayton Doss, by counsel J. Michael Anderson, appeals the Circuit Court of Pocahontas County's March 26, 2018, order affirming the family court's final divorce order. Respondent Melissa Dawn Hill-Doss, by counsel Robert P. Martin, filed a response in support of the circuit court's order. On appeal, petitioner argues that the family court erred in (1) personally receiving all of the mediator's notes from the parties' mediation; (2) finding that spousal support was necessary based upon respondent's reported expenses; (3) ordering that spousal support begin retroactively on the date of separation; and (4) having ex parte communication with respondent's counsel.[1]

---

[1]Petitioner seems to ask this Court to apply the plain error doctrine to several of his assignments of error. *See* Syl. Pt. 12, *Keesee v. General Refuse Service Inc.*, 216 W. Va. 199, 604 S.E.2d 449 (2004) ("To trigger application of the 'plain error' doctrine there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings") (internal citations omitted). However, short of mentioning plain error in his listed assignments of error, petitioner makes no argument regarding plain error, nor does he cite to any law in support of applying the plain error doctrine. Thus, while petitioner has complied with Rule 10(c)(3) of the West Virginia Rules of Appellate Procedure in alerting this Court that he asserts plain error, he entirely fails to comply with Rule 10(c)(7), which requires that the brief contain an

> argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower

(continued . . . )

1

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties were married in Greenbrier County, West Virginia, in May of 1991. Two children were born of the marriage before the parties separated on or about June 25, 2015.[2] Shortly thereafter, respondent filed a petition for divorce in which she alleged grounds of mental cruelty and adultery. Petitioner filed a counter-petition wherein he alleged the grounds of mental cruelty and inhumane treatment by respondent.

The family court appointed a mediator to assist the parties in reaching a resolution regarding their divorce. In May of 2017, the parties submitted to the mediation and reached a settlement on all issues except the matter of spousal support. Following the mediation, the mediator sent his report to the family court and inadvertently attached his personal notes. These notes included several proposals and offers regarding spousal support, including a permanent award of $2,000.00 per month. A few days later, the mediator sent a "corrective letter" without his personal notes.

The family court held final hearings on the matter in July of 2017 and August of 2017. Ultimately, the family court granted the divorce on the ground of adultery, finding that petitioner failed to offer evidence regarding his claim of mental cruelty, and granted respondent an award of permanent alimony in the amount of $2,000.00 per month, commencing retroactively on July 1, 2015, since the parties had separated around June 25, 2015.

Petitioner appealed the matter, arguing that the family court erred in accepting into evidence notes from the parties' mediation, awarding respondent a permanent spousal support award to begin retroactively near the date of separation, making erroneous findings of fact, and having ex parte communications with respondent's counsel. The circuit court refused the appeal, finding that the grounds asserted were without merit. Specifically, the circuit court found that petitioner's statement that the mediation notes were "presumably read by the court" was pure speculation. Further, the circuit court determined that it was within the family court's discretion to retroactively award spousal support and that it did not abuse its discretion with regard to the other grounds. It is from the March 26, 2018, order that petitioner appeals.

---

tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Accordingly, we decline to address these issues under a plain error analysis.

[2]Both children have reached the age of majority.

We have previously held that

> [i]n reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syllabus, *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

First, petitioner alleges that the family court erred in accepting and filing the mediator's notes into evidence. Petitioner avers that this action violated Rule 43(d) of the West Virginia Rules of Practice and Procedures for Family Court,[3] as well as Rule 408 of the West Virginia Rules of Evidence[4] and Rule 25.12 of the West Virginia Trial Court Rules.[5] According to petitioner, the admittance of these notes prejudiced him because the family court "presumably" read the notes and awarded respondent a permanent award of $2,000 in spousal support based upon one of the proposals that was contained in the mediator's notes. We find no merit in petitioner's argument.

---

[3]Rule 43(d) sets forth, in part,

[a]ll mediation proceedings, including premediation screening, are confidential settlement negotiations subject to Rule 25.12 of the Trial Court Rules. All persons involved in premediation screening and mediation shall preserve the confidentiality of negotiations, of all written materials utilized in the processes, of all information obtained in the processes, and of all agreements; and with the exception of the abbreviated premediation screening report, the Mediation Outcome Report, and any mediated agreement, shall keep such matters confidential from the court.

[4]Rule 408 sets forth, in part, as follows:

Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim, the liability of a party in a disputed claim, or to impeach by a prior inconsistent statement or a contradiction:

(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or a statement made during compromise negotiations about the claim.

[5]Rule 25.12 provides that "[a] mediator shall maintain and preserve the confidentiality of all mediation proceedings and records."

Petitioner argues that the circuit court must have read the mediator's notes given the fact that it happened to award one of the proposed offers that was contained in the notes. However, petitioner's argument is purely speculative and invites this Court to presume facts that he has not proven. Indeed, this Court has long held that

> "[t]here is a presumption of regularity of court proceedings that remains until the contrary appears, and the burden is on the person who alleges such irregularity to show it affirmatively; and where an order of a court of record is merely silent upon any particular matter, it will be presumed, notwithstanding such silence, that such court performed its duty in every respect as required by law[.]" Syllabus, in part, *State ex rel. Smith v. Boles*, 150 W.Va. 1, 146 S.E.2d 585 (1965).

Syl. Pt. 2, *State v. J.S.*, 233 W. Va. 198, 757 S.E.2d 622 (2014). Simply because the family court happened to grant an award identical to one of several proposals contained in the mediator's notes does not demonstrate that the family court improperly considered the mediator's notes. We find that petitioner has failed to meet his burden, presume regularity in the family court's proceedings, and determine that petitioner is entitled to no relief in this regard.

Next, petitioner argues that the family court erred in requesting a bifurcation order during ex parte communication with respondent's counsel. Petitioner avers that respondent's counsel produced a proposed bifurcation order in August of 2017. When petitioner asked about the bifurcation order due to having no recollection of the issue, the family court explained that it had previously asked respondent's counsel, on the record, to prepare an order. Petitioner insists that a bifurcation order was never discussed on the record and asserts that the family court must have discussed the matter with respondent's counsel outside of his presence. In support of his assertion that ex parte communication occurred, petitioner also alleges two other instances of ex parte communication, including an instance wherein he asked the family court whether they would be taking a lunch break during one of their hearings. The family court responded that it believed respondent's counsel had other commitments that afternoon, preventing the proceedings from carrying on into the afternoon. Petitioner submits that the family court's knowledge of respondent's counsel's schedule demonstrates ex parte communication. Petitioner alleges another instance wherein respondent's counsel sent ex parte e-mails to the family court.

However, apart from asserting these issues, petitioner provides no argument on the matter. The only law cited by petitioner under this assignment of error is Rule 53 of the West Virginia Rules of Practice and Procedures for Family Courts, which sets forth, in part, that

> [t]he court shall not bifurcate a divorce proceeding unless there is a compelling reason to grant the divorce prior to resolving issues related to spousal support, child support, and distribution of property; no party will be prejudiced by the bifurcation; and a temporary order has been entered granting spousal support, child support, and any other necessary relief.

4

To the extent petitioner argues that his case should not have been bifurcated, we note that the family court did not enter respondent's proposed order bifurcating the case. Accordingly, we find no error in this regard.

Further, if petitioner is attempting to claim some sort of prejudice from these alleged communications, he provides no authority to support such a claim. *See* W. Va. R. App. P. 10(c)(7) ("The brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . ."). Nevertheless, upon our review, we find petitioner's claims to be a complete misrepresentation of the record. The family court clearly stated twice on the record that it did not contact respondent's counsel, but requested that he prepare an order at the prior hearing. Petitioner claims that respondent's counsel's statement "I contacted" meant that he contacted the family court in regard to the order. However, this is a misrepresentation as counsel's sentence beginning with "I contacted" was immediately cut off by the family court's explanation of the situation. As such, petitioner's claim that the subject of respondent's counsel's contact was the family court is purely speculative. Further, petitioner's claim that respondent's counsel engaged in ex parte e-mail communication with the family court is similarly without merit given that petitioner's counsel was included on the e-mails.[6] Petitioner's claim that the family court's knowledge of respondent's counsel's scheduling conflict constituted ex parte communication is likewise without merit, especially given petitioner's failure to explain how he was prejudiced by the family court's knowing that respondent's counsel had other engagements on the afternoon of the hearing. Accordingly, we find that petitioner is entitled to no relief in this regard.

Petitioner's remaining assignments of error focus on his assertion that the circuit court erroneously awarded spousal support. "Questions relating to alimony . . . are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syl. Pt. 3, *Lucas v. Lucas*, 215 W. Va. 1, 592 S.E.2d 646 (2003) (quoting syllabus, *Nichols v. Nichols*, 160 W. Va. 514, 236 S.E.2d 36 (1977)).

According to petitioner, the family court abused its discretion in awarding spousal support based upon erroneous findings.[7] Specifically, petitioner avers that the family court

---

[6]Black's Law Dictionary defines ex parte communication as "[a] communication between counsel and the court *when opposing counsel is not present*." *Ex parte communication, Black's Law Dictionary* (10th ed. 2014) (emphasis added).

[7]In support of his argument, petitioner sets forth several alleged erroneous findings that have no bearing on his ultimate assignment of error that the family court erred in granting respondent a spousal support award based upon uncorroborated financial statements. Specifically, petitioner argues that the family court erred in finding that he "acknowledges that he admitted his extramarital affair to his wife . . . in November of 2014." According to petitioner, he admitted, in June of 2015, that he began the affair in November of 2014 and that the finding is misleading. We fail to see how this alleged erroneous finding supports his claim regarding the financial statement. Further, petitioner's claim seems to be disingenuous as he proposed a nearly

(continued . . . )

erroneously accepted one of respondent's three financial statements into evidence without corroborating evidence. Petitioner insists that the admitted financial statement contains errors that led to the family court's determination of a standard of living higher than what he and respondent actually enjoyed, which in turn inflated the spousal support award.

We find, however, that the family court did not abuse its discretion in granting respondent an award of spousal support given that there was sufficient evidence to support the same. First, petitioner argues that the financial statement indicates that respondent has a house and loan payment, which she testified she does not have. However, to support his claim, petitioner cites to portions of the record that do not support, or even contradict, his claims. In fact, petitioner cites to a portion of the transcript containing the family court's discussion of a lunch break and to respondent's testimony that she did have a car payment through her parents. Second, petitioner avers that the family court accepted respondent's claims that she borrowed money from her parents "without any evidence such as cancelled checks, electronic bank transfers or other documentation to support said loans." However, respondent's mother clearly testified to the money loaned to respondent and their agreed upon repayment plan. Third, petitioner avers that the financial statement was admitted simply because it was the "lowest." The record demonstrates that respondent filed multiple financial statements because she had erroneously assumed that she could include certain expenses on her initial statements and had filed a new statement excluding those items. The family court accepted that financial statement not simply because it was the "lowest," but because it aligned with respondent's testimony regarding her lowered expenses. Fourth, petitioner avers that the family court erroneously attributed the purchase of their children's cars to respondent and him when respondent's parents purchased the vehicles. Petitioner only cites to his own self-serving testimony to support his claim and offers no corroborating evidence. Based on the foregoing, it is clear that petitioner's claims are not supported by the record in this regard, nor has he proven that these instances led to an inflated standard of living considered in awarding spousal support. Moreover, the family court clearly considered the applicable factors set forth in West Virginia Code § 48-6-301(b). In its order, the family court discussed approximately thirteen of the necessary factors in determining spousal support, setting forth its reasons for granting the same. On appeal, petitioner fails to

---

identical finding: "That in November, 2014, [petitioner] admits to having an extramarital affair." Petitioner additionally alleges that the family court erred in finding that he did not provide corroborating evidence regarding his mental cruelty claim. While petitioner argues that respondent admitted to accusing him of giving her a sexually transmitted disease in support of his claims of mental cruelty as a ground for the divorce, the portion of the transcript to which petitioner cites demonstrates that respondent did not make such accusations until *after* the parties had already separated, and in response to learning of petitioner's affair. Moreover, we fail to see how these "erroneous" findings support petitioner's argument that the family court erred in awarding spousal support based upon an incorrect financial statement. Accordingly, we find no merit in these arguments.

establish that the family court erred given its detailed findings regarding the need for spousal support and petitioner's failure to adequately cite to the record to establish his claims.[8]

Petitioner also alleges that the family court erred in awarding respondent spousal support to begin retroactively on or around the date of their separation.[9] According to petitioner, following his separation from respondent, he paid the marital bills through May of 2016 and was entitled to a credit of one-half of said debt. *See Conrad v. Conrad*, 216 W. Va. 696, 612 S.E.2d 772 (2005). However, petitioner waived his right to that credit during the mediation proceedings. He submits that such a waiver is negated by the award of retroactive spousal support. Were family courts permitted to allow this "double dipping," there would be little incentive for parties to waive their *Conrad* credit only to lose it to spousal support. We disagree.

While petitioner claims that the family court's actions essentially denied him the benefit of waiving his *Conrad* credit, he is unable to demonstrate that he waived the credit with the understanding that he would not have to pay spousal support. Indeed, the mediator indicated in his report that the parties had come to an agreement on all issues except spousal support. As such, petitioner's waiver of the *Conrad* credit was separate and distinct from any spousal support award. In any event, the family court found that "[petitioner] shall be given credit for all sums he paid for the upkeep and maintenance of the marital home, including all payments for utilities, insurance and taxes, which he estimated at $439.00 per month, but excluding all monies addressed in the parties mediation agreement." The family court further ordered that "[petitioner] shall submit to [respondent] and this [c]ourt an accounting of all monies paid for utilities and

---

[8]As part of his argument, petitioner avers that the family court erred in determining that respondent's spending post-separation was substantially the same as her spending during the marriage. Petitioner argues that he proved that respondent's spending post-separation was excessive, but cites generally to over seventy pages of transcript. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure sets forth that "[t]he argument must contain appropriate and *specific* citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal." (Emphasis added). As such, we decline to address this specific argument given petitioner's failure to appropriately support his claim with adequate citations to the record.

[9]As part of his argument, petitioner cites to Rule 23 of the West Virginia Rules of Practice and Procedure for Family Court, which sets forth that "[e]xcept for good cause shown, orders granting relief in the form of spousal support or child support shall make such relief retroactive to the date of service of the motion for relief." To the extent petitioner argues that the family court erred in granting a retroactive award of spousal support preceding the date of respondent's motion for relief, we note that the family court set forth a very detailed final order containing at least forty-eight distinct findings and concluded "[f]or reasons as set forth here, the [c]ourt finds it reasonable and necessary that [respondent] be granted an award of permanent alimony . . . commencing retroactively to July 01, 2015, the parties having separated June 24, 2015." As such, it is clear that in considering its extensive findings set forth, the family court determined that good cause existed for granting a retroactive award of spousal support and, thus, we find no error.

other necessities to maintain the marital domicile for the period of July, 01, 2015 through July 01, 2017." Moreover, the family court provided petitioner the right to a "further hearing on the issue of offset if the parties cannot agree." Petitioner fails to demonstrate where he raised the issue of the granting of this credit for maintenance of the marital home despite the family court's having provided an avenue for doing so. We find that the retroactive award of spousal support was within the family court's discretion.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** September 13, 2019

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison