## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

TERESA L. UNDERHILL,
**Respondent below, Petitioner,**

vs.) No. 14-1102 (Kanawha County10-D-96 )

JAMES F. UNDERHILL,
**Petitioner below, Respondent**

**FILED**

**November 9, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Teresa Underhill ("Ms. Underhill"), by counsel Tim C. Carrico, appeals the September 11, 2014, order of the Circuit Court of Kanawha County affirming an April 29, 2014, final order of the Family Court of Kanawha County that modified the spousal support award contained in the parties' final divorce order. In this appeal, Ms. Underhill argues that the circuit court erred by affirming the family court's order modifying the spousal support award. By contrast, Respondent James Underhill ("Mr. Underhill"), by counsel Mark W. Kelley and David S. Hughart, raises a cross-assignment of error. He asserts that the family court should have completely terminated, rather than modified, the spousal support award contained in the final divorce order.

Upon consideration of the standard of review, the record presented, the parties' briefs and oral arguments, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. and Ms. Underhill divorced in 2011 after approximately thirty years of marriage. In 2011, Mr. Underhill was an executive with McJunkin Red Man Corporation and earned a "high six-figure" income.[1] Ms. Underhill was a CPA but was not employed when the parties divorced. As part of the divorce settlement, the parties entered into an agreement to resolve their financial issues, resulting in each party receiving approximately $2,300,000.00 after the "net martial estate" was divided. The final order incorporating this agreement and resolving all outstanding issues in the divorce was entered by the family court on December 29, 2011.

---

[1] In her brief to this Court, Ms. Underhill states that Mr. Underhill earned $849,394.00 in 2011.

1

The family court's final divorce order included a spousal support provision that required Mr. Underhill to pay Ms. Underhill $10,000.00 a month for a period of thirty-six months and then $9,750.00 a month until Ms. Underhill reached age sixty-six and a half or until a specified event occurred. The order states that the first eighteen months of the spousal support obligation were non-modifiable unless Mr. Underhill lost his job. Further, after the first eighteen months, the spousal support obligation was "modifiable by either party upon a proper Motion to the Court." The spousal support provision contained in the family court's final order states:

> Petitioner [Mr. Underhill] shall be obligated to pay spousal support commencing on January 15, 2011, in the amount of $10,000.00 a month for a period of three (3) years (intended to be thirty – six (36) months). Except that Petitioner's obligation of Ten Thousand Dollars ($10,000.00) per month is non-modifiable for a period of eighteen (18) months of the thirty – six (36) unless Petitioner loses his current employment and is unable to find commensurate employment within 90 days, at which time Petitioner may file a motion for a modification, which if granted shall be effective from the date he lost his employment, and not the date of the filing of the petition for modification. Accordingly, if the Court determines a modification is warranted then Petitioner shall receive a credit and/or refund for any excess amounts he paid between the date his employment ended and the date the modified spousal support payment begins. **After the eighteen (18) months this amount is modifiable by either party upon a proper Motion to the Court.** The Petitioner's obligation on the thirty–seventh (37th) month will automatically reduce to $9,750.00 a month, and will continue until such time as Respondent attains the age of sixty-six and one-half (66 ½) years of age at which time Petitioner's spousal support obligation shall cease and after that date Respondent shall not be permitted to seek or receive spousal support. . . . The obligation terminates in the event of either party's death or at Respondent's remarriage or de facto marriage. For purposes of determining the amounts of alimony the parties have not stipulated to either party's monthly expenses or financial needs. The parties have stipulated to Petitioner's income, from any source, in the taxable year 2010 in a total gross amount of $750,000.00. In taxable year 2011, Petitioner's total gross income from any source is anticipated to be

2

> $450,000.00 and the parties have stipulated to this as Petitioner's 2011 gross income. The parties also stipulate that for eighteen (18) months beginning January 2011 Respondent will have no income. Thereafter commencing in July 2012, the parties stipulate that Respondent should be able to find employment with her stipulated income at $40,000.00 gross per year.

(Emphasis added).

After entry of the family court's order, Mr. Underhill made the $10,000.00 monthly payments to Ms. Underhill for thirty-four consecutive months (January 2011 through October 2013). On August 28, 2013, Mr. Underhill filed a motion to terminate his spousal support obligation, asserting that three substantial changes in the parties' circumstances had occurred since the entry of the family court's final order: (1) he lost his job,[2] (2) Ms. Underhill's net worth had increased from approximately $2,300,000.00 at the time of the divorce to over $6,000.000.00 by 2013 through an inheritance and through certain "profit units"[3] becoming valuable; and (3) while the parties contemplated Ms. Underhill finding employment that would pay her $40,000.00 annually, she found a job that paid her $65,000.00 a year. Ms. Underhill responded by asserting that Mr. Underhill's severance package from his former employer would still provide him with a six-figure income in 2014, and that under the terms of the spousal support obligation agreement, Mr. Underhill should not be permitted to reduce or terminate his spousal support payments.

The family court agreed with Mr. Underhill that there had been substantial changes in the parties' circumstances and entered an order modifying, but not completely terminating, the spousal support obligation. In so ruling, the family court cited and relied

---

[2] Mr. Underhill was "involuntarily" retired by his employer in August 2013. He received a severance package and a contingent consulting agreement, but did not receive any income for the six-month period following his "retirement." After six months, his severance package and consulting agreement were expected to pay him on a monthly basis from March 2014 through March 2015.

[3] At the time of the divorce, the parties' divided a number of so-called "profit units" and "common units" that Mr. Underhill had received as part of his employment with McJunkin Red Man Corporation. The family court described these "profit units" as follows: "It was understood at the time [of the divorce] that such units would only have any real value if the company went public and became a publicly traded company. Such event occurred after the parties' divorce was finalized and [Ms. Underhill] reaped a benefit of approximately $1,140,000.00 from that occurrence."

3

upon W.Va. Code § 48-8-103(b) [2012]. The title of this code section is "[p]ayment of spousal support." It states:

> (b) At any time after the entry of an order pursuant to the provisions of this article, the court may, upon motion of either party, revise or alter the order concerning the maintenance of the parties, or either of them, and make a new order concerning the same, issuing it forthwith, as the altered circumstances or needs of the parties may render necessary to meet the ends of justice.

The family court ruled that "the loss of [Mr. Underhill's] employment constitutes a significant change in circumstances." It also ruled that because Ms. Underhill's net worth had increased from $2,324,362.00 at the time of the divorce to $6,112,423.72 by October 2013, her "need for spousal support has gone down[.]" Additionally, the family court noted that Ms. Underhill was earning $65,000.00 per year. Based on these findings, the family court ruled as follows:

> This Court, having considered "the financial needs of the parties, their incomes and income earning abilities and their estates and the income produced by their estates in determining the amount of alimony to be awarded in a modification proceeding," syl. pt. 2, *Yanero v. Yanero*, 171 W.Va. 88, 297 S.E.2d 863 (1982), concludes that [Mr. Underhill's] obligation to [Ms. Underhill] should be modified effective August 30, 2013.

The family court stated that "while [Mr. Underhill] lost his employment, he nonetheless is still receiving earnings from that employment" via the severance package from his former employer. Mr. Underhill was scheduled to receive monthly payments from his severance package from March 2014 through March 2015.

Due to these changed circumstances, the family court ordered that: (1) Mr. Underhill's spousal support obligation to Ms. Underhill would be suspended from the date he lost his job (August 2013) until he began receiving his monthly payments from the severance package (March 2014);[4] (2) for the months of May and June 2014, Mr.

---

[4] While Mr. Underhill lost his job and petitioned the court to terminate his spousal support obligation in August 2013, he continued making monthly spousal support payments to Ms. Underhill in September and October 2013 while the family court considered his motion. The family court suspended his monthly payments from August 2013 through February 2014. It ruled that "for the months of March and April 2014, [Mr.

4

Underhill's spousal support obligation would be $10,000.00 a month, which would complete his thirty-six month obligation to pay that amount; (3) for the period of June 2014 through March 2015, Mr. Underhill's spousal support obligation would be $9,750.00 a month; (4) Mr. Underhill's spousal support obligation would terminate as of April 1, 2015, which is the date when his severance package expired; and (5) the court would retain jurisdiction to modify the spousal support obligation as the circumstances of the parties may require until Ms. Underhill reaches the age of sixty-six and a half.

Mr. Underhill appealed the family court's order to the circuit court, arguing that the family court erred by failing to completely terminate his spousal support obligation. Ms. Underhill filed a cross-appeal to the circuit court, arguing that the family court erred by modifying the terms of the spousal support obligation contained in the final divorce order.

The circuit court entered a detailed order affirming the family court's order. The circuit court's order provides that "[t]he family court entered a thorough order modifying the spousal support obligation, which was within its discretion. See W.Va. Code § 48-8-103(b)." After noting that W.Va. Code § 48-8-103(b) provided the family court with the authority to modify a spousal support obligation due to the altered circumstances or needs of the parties, the circuit court's order concludes:

> After carefully reviewing the family court's application of the facts of this case to pertinent law, the Court cannot find that the family court abused its discretion in modifying [Mr. Underhill's] spousal support obligation to [Ms. Underhill] but not completely terminating said spousal support. In addition, the Court cannot find that the family court abused its discretion in suspending [Mr. Underhill's] monthly spousal support obligation for six months. These rulings were within the sound discretion of the family court.

After entry of the circuit court's order, Ms. Underhill filed the present appeal, asserting that the circuit court erred by affirming the family court's order modifying the spousal support obligation. Mr. Underhill filed a response to Ms. Underhill's appeal and also filed a cross-assignment of error with this Court, arguing that the circuit court erred by affirming the family court's order that modified, rather than completely terminated, his spousal support obligation.

Our standard of review was set forth in the Syllabus of *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). It states:

Underhill] is entitled to credit for the payments he made [$10,000.00 a month] in September and October 2013."

5

In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

The issue on appeal is whether the circuit court erred when it affirmed the family court's order modifying the spousal support obligation. The three main errors asserted by Ms. Underhill are: (1) the changes in the parties' circumstances were "contemplated" at the time of the divorce and therefore should not have been considered by the family court; (2) the family court erred by considering Ms. Underhill's increased net worth despite the parties' agreement that her financial needs and monthly expenses would not be considered in a modification proceeding; and (3) the family court erred by not considering Mr. Underhill's gross income from sources other than his former employer. In his cross-assignment of error, Mr. Underhill asserts that the family court erred by failing to completely terminate his spousal support obligation.

Before addressing the parties' specific assignments of errors, we begin our analysis with a review of the general standards regarding the modification of a spousal support award. This Court has held that "[q]uestions relating to [spousal support] . . . are within the sound discretion of the court and its action with respect to such matters will not be disturbed on appeal unless it clearly appears that such discretion has been abused." Syllabus, in part, *Nichols v. Nichols*, 160 W.Va. 514, 236 S.E.2d 36 (1977). Along with W.Va. Code § 48-8-103(b), which was relied on by the family court, W.Va. Code § 48-5-701 [2001] provides statutory authority for a court to alter a spousal support award. It states, "After the entry of a final divorce order, the court may revise the order concerning spousal support or the maintenance of the parties and enter a new order concerning the same, *as the circumstances of the parties may require*." (Emphasis added). This Court addressed the purpose of a spousal support award in Syllabus Point 6 of *Lucas v. Lucas*, 215 W.Va. 1, 592 S.E.2d 646 (2003), holding: "'The sole purpose of an award of [spousal support] is to provide for the support of a former spouse.' Syl. Pt. 3, in part, *Clay v. Clay*, 182 W.Va. 414, 388 S.E.2d 288 (1989)." Moreover, as we held in Syllabus Point 3 of *Goff v. Goff*, 177 W.Va. 742, 356 S.E.2d 496 (1987), "The party petitioning for a modification of the support provisions of a divorce decree bears the burden of showing a substantial change of circumstances." With this background in mind, we turn to the parties' arguments.

Ms. Underhill's first assignment of error is that the changes in the parties' circumstances were "contemplated" at the time of the final divorce order and therefore should not have been considered by the family court in the modification proceeding. Ms.

6

Underhill also argues that while the changes in the parties' circumstances were generally contemplated at the time of the divorce, "Mr. Underhill failed to prove a change in circumstances sufficient to warrant termination of his spousal support obligation." Because Ms. Underhill simultaneously asserts that (1) the parties contemplated the changes in circumstances at the time of the divorce, and that (2) Mr. Underhill failed to prove there was a substantial change in the parties' circumstances, we must make two inquiries. First, were there *substantial changes* in the parties' circumstances, and, if so, were these changes contemplated by the parties at the time of the divorce.

This Court has consistently maintained that "the primary standard to determine whether or not a trial court should modify an order awarding alimony is a substantial change of circumstances." *Zirkle v. Zirkle*, 172 W.Va. 211, 217, 304 S.E.2d 664, 671 (1983); *see also Adkins v. Adkins*, 208 W.Va. 364, 540 S.E.2d 581 (2000); *Luff v. Luff*, 174 W.Va. 734, 329 S.E.2d 100 (1985). We have recognized the difficulty in precisely defining the phrase "substantial change in circumstances" but have stated that it "most often refers to circumstances which have *substantially impacted upon the financial resources and economic needs* of the parties subsequent to their divorce." *Clay v. Clay*, 182 W.Va. 414, 422, 388 S.E.2d 288, 296 (1989) (emphasis added).

In the present case, Ms. Underhill's net worth at the time of the divorce was approximately $2,300,000.00. When Mr. Underhill petitioned the family court for termination of his spousal support obligation in 2013, Ms. Underhill's net worth had increased to approximately $6,000,000.00. Further, Ms. Underhill was earning $65,000.00 a year in 2013, whereas at the time of the divorce, the parties stipulated that she was expected to find employment that would pay her $40,000.00 annually. By 2013, Ms. Underhill's net worth was greater than Mr. Underhill's net worth.[5] Based on these facts, it is clear that when Mr. Underhill filed his modification petition in 2013, there had been substantial changes in the parties' circumstances that significantly "impacted upon the financial resources and economic needs of the parties."

Our second inquiry is whether the parties contemplated these changes at the time of their divorce. This Court has held that "[i]n order to satisfy the requirement of a substantial change in circumstances necessary to grant a modification in support obligations, the change must be one which would not reasonably have been expected at the time of the divorce decree." Syllabus Point 4, *Goff v. Goff*, *supra*. The three substantial changes in circumstances raised by Mr. Underhill are (1) that he lost his job, (2) that Ms. Underhill's net worth greatly increased due to the inheritance she received and to the "profit units" becoming valuable, and (3) that Ms. Underhill is earning $25,000.00 more per year than was anticipated at the time of the divorce.

---

[5] Ms. Underhill's brief to this Court notes that Mr. Underhill's net worth in 2015 is "in excess of $5,000,000.00." Ms. Underhill does not dispute that her net worth is approximately $6,000,000.00.

7

Mr. Underhill lost his job in 2013. The parties contemplated this possibility at the time of their divorce. However, the final divorce order states that if Mr. Underhill were to lose his job, he could seek a modification of the spousal support obligation during the period when his obligation was otherwise non-modifiable (the first eighteen months after the divorce). Therefore, although contemplated by the parties, this change in circumstance weighs in favor of permitting a modification of the spousal support obligation because the final divorce order expressly permits such a modification: "Petitioner's obligation . . . is non-modifiable for a period of eighteen (18) months of the thirty–six (36) unless Petitioner loses his current employment and is unable to find commensurate employment within 90 days, at which time Petitioner may file a motion for a modification[.]"

The second change in the parties' circumstances raised by Mr. Underhill is that Ms. Underhill's net worth increased from $2,300,000.00 to approximately $6,000,000.00 through an inheritance and through the "profit units" becoming valuable. At the time the final divorce order was entered, both parties anticipated receiving an inheritance at some future date. While a potential inheritance was generally contemplated, the spousal support provision contained in the final divorce order does not address either party receiving an inheritance, nor does it exclude a potential inheritance from being considered during a future modification proceeding. Similarly, neither party knew whether the "profit units" received by Ms. Underhill at the time of the divorce would produce value. The value of the "profit units" was contingent on whether Mr. Underhill's private employer would go public. When the parties divorced in 2011, it was unknown if or when this event would occur.

Finally, it is undisputed that the spousal support provision contemplated that Ms. Underhill would find employment that was expected to pay her $40,000.00 annually. By 2013, Ms. Underhill was earning substantially more than was anticipated at the time of the divorce—she was earning $65,000.00 a year.

Based on the foregoing, we conclude that there were substantial changes in the parties' circumstances and that these changes were not reasonably expected by the parties at the time of their divorce. These changed circumstances were highly relevant to the family court's analysis of the parties' financial resources. We therefore find that the family court did not abuse its discretion by considering the changes in circumstances raised by Mr. Underhill.

The second error raised by Ms. Underhill is that the family court erred by considering her increased net worth during the modification proceeding. Ms. Underhill asserts that the spousal support provision contained in the final divorce order precludes consideration of her financial needs and monthly expenses in a modification proceeding. Ms. Underhill argues that because her financial needs should not have been considered,

8

the family court erred by finding that her increased net worth ($2,300,000.00 at the time of the divorce to $6,000.000.00 in 2013) constituted a substantial change in circumstance.

The spousal support provision contains one sentence addressing the parties' monthly expenses and financial needs. It states, "For purposes of determining the amounts of alimony the parties have not stipulated to either party's monthly expenses or financial needs." Ms. Underhill argues that this sentence precludes her increased net worth from being considered in a subsequent modification proceeding. We disagree. Neither this sentence, nor any other part of the spousal support provision, contains any language limiting consideration of Ms. Underhill's financial resources during a subsequent modification proceeding. The spousal support provision provides only one restriction on modification—it states that the first eighteen months of the agreement were non-modifiable unless Mr. Underhill lost his job during that period. The spousal support provision does not restrict either party from raising the financial resources of the other party in a subsequent modification proceeding. Rather, the spousal support provision contains the broad, general statement that the obligation was modifiable by either party after eighteen months: "After the eighteen (18) months this amount is modifiable by either party upon a proper Motion to the Court." We therefore find that the family court did not abuse its discretion by considering Ms. Underhill's increased net worth.

Ms. Underhill also argues that the family court erred by not considering Mr. Underhill's gross income from sources other than his former employer. We agree with Ms. Underhill that the family court should have considered Mr. Underhill's income from sources other than his former employer. In Syllabus Point 2 of *Yanero v. Yanero*, 171 W.Va. 88, 297 S.E.2d 863 (1982), this Court explained that a court in a spousal support modification proceeding should "consider the financial needs of the parties, their incomes and income earning abilities and their estates and the income produced by their estates in determining the amount of [spousal support] to be awarded in a modification proceeding." However, because we determined that the family court did not err by considering Ms. Underhill's increased net worth, we find that, under the facts of the instant case, the family court's failure to consider Mr. Underhill's income from sources other than his former employer was harmless error. Ms. Underhill asserts that when considering those other sources of income, Mr. Underhill's net worth is approximately $5,000,000.00. By comparison, Ms. Underhill's net worth is approximately $6,000,000.00. Therefore, even if the family court had considered Mr. Underhill's gross income from sources other than his former employer, its ultimate determination would not have changed because its ruling was largely predicated on Ms. Underhill's need for spousal support having decreased due to her increased net worth. "'The sole purpose of an award of [spousal support] is to provide for the support of a former spouse.' Syl. Pt. 3, in part, *Clay v. Clay*, 182 W.Va. 414, 388 S.E.2d 288 (1989)." Syllabus Point 6, *Lucas v. Lucas*, *supra*.

9

The final issue we address is Mr. Underhill's cross-assignment of error in which he asserts that the family court erred by failing to completely terminate his spousal support obligation. The family court explained its ruling to modify the spousal support obligation as follows: "The court further finds that while [Mr. Underhill] lost his employment, he, nonetheless, is still receiving earnings from that employment[.]" The circuit court's order affirming the family court's ruling states, "the Court cannot find that the family court abused its discretion in modifying [Mr. Underhill's] spousal support obligation to [Ms. Underhill] but not completely terminating said spousal support."

Our standard of review for this issue is the same one applied by the circuit court—abuse of discretion. In discussing the application of the abuse of discretion standard, this Court has consistently stated that under such standard, "we will not disturb a . . . court's decision unless the . . . court makes a clear error of judgment or exceeds the bound of permissible choices in the circumstances." *Wells v. Key Commc'ns, L.L.C.*, 226 W.Va. 547, 551, 703 S.E.2d 518, 522 (2010) (citation omitted). This Court has invariably stated that "[u]nder abuse of discretion review, we do not substitute our judgment for the [lower] court's." *State v. Taylor*, 215 W.Va. 74, 83, 593 S.E.2d 645, 654 (2004) (Davis, J., dissenting) (citing *Burdette v. Maust Coal & Coke Corp.*, 159 W.Va. 335, 342, 222 S.E.2d 293, 297 (1976)). Thus, the family court's ruling is entitled to significant deference. Absent an abuse of discretion, this Court must refrain from substituting its judgment for that of the family court, even if this Court might have decided a case differently.

In the present case, we do not find that the family court abused its discretion by modifying, rather than completely terminating, Mr. Underhill's spousal support obligation. The family court set forth a detailed order explaining the changed circumstances of the parties and explaining its reasons for modifying the spousal support obligation. Under W.Va. Code § 48-5-701, the family court was authorized to modify the spousal support obligation "as the circumstances of the parties may require." The family court noted that while Mr. Underhill lost his job in 2013, he was going to receive substantial income from his former employer until March 2015.[6] Because Mr. Underhill would continue to receive this substantial compensation from his former employer until March 2015, the family court determined that he should continue to make spousal support payments until that date. After review, we find no abuse of discretion in the family court's ruling. We consequently affirm the decision of the family court, as adopted by the lower court.

For the foregoing reasons, we affirm the circuit court's September 11, 2014, order.

---

[6] The family court stated that between March 1, 2014, and March 31, 2015, Mr. Underhill "will receive a total of $838,628.00" from his former employer.

10

Affirmed.

**ISSUED:** November 9, 2015

**CONCURRED IN BY:**

Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**CONCURRING AND WRITING SEPARATELY:**

Justice Robin Jean Davis, joined by Chief Justice Workman:

In this case, the majority has affirmed the circuit court's modification of alimony. I agree with the majority's conclusions under the current factual circumstances presented. I write separately to highlight the fact that, while the alimony, also commonly referred to as spousal support, in this case has been suspended as of April 1, 2015, the family court retains continuing jurisdiction over this matter until Mrs. Underhill reaches the age of sixty-six and one half. In other words, either party can, at some point in the future before Mrs. Underhill attains the requisite age, petition the family court for modification of spousal support in the event that the circumstances of the parties so require. *See* W. Va. Code § 48-5-701 (2001) (Repl. Vol. 2014) ("After the entry of a final divorce order, the court may revise the order concerning spousal support . . . and enter a new order concerning the same, as the circumstances of the parties may require."). *See also Douglas v. Douglas*, 171 W. Va. 162, 163, 298 S.E.2d 135, 136-37 (1982) (per curiam) ("Our general rule is that the circuit court which grants a divorce is vested by statute with continuing subject-matter jurisdiction to modify or alter its original order as to alimony . . . as the changed circumstances of the parties . . . may require." (citations omitted)).

Contrary to the argument of Mrs. Underhill, that no modification could be had unless Mr. Underhill's annual income from any source fell below $450,000.00, and Mr. Underhill's argument, that his spousal support obligation should be completely terminated (which would necessarily foreclose modification), there is nothing in this case to preclude a future modification under the appropriate circumstances. In this regard, the Legislature has expressly declared that

> [a]ny award of periodic payments of spousal support shall be deemed to be judicially decreed and subject to subsequent modification unless there is some explicit, well expressed, clear, plain and unambiguous provision to

11

the contrary set forth in the court-approved separation agreement or the order granting the divorce. . . .

W. Va. Code § 48-6-201(b) (2001) (Repl. Vol. 2014). The final order granting spousal support in this case contained such an "explicit, well expressed, clear, plain and unambiguous provision" restricting modification. W. Va. Code § 48-6-201(b). However, that provision applied only during the first eighteen months during which spousal support was paid:

> Petitioner's obligation of Ten Thousand Dollars ($10,000.00) per month is non-modifiable for a period of eighteen (18) months . . . unless Petitioner loses his current employment and is unable to find commensurate employment within 90 days, at which time Petitioner may file a motion for modification . . . . After the eighteen (18) months[,] *this amount is modifiable by either party upon a proper Motion to the Court*.

(Emphasis added). The foregoing language is clear in stating that, after the expiration of eighteen months, either party could seek modification by proper motion.

Mrs. Underhill also is mistaken in her belief that, in considering any petition for modification, the family court is precluded from considering either party's monthly expenses or financial needs. In this regard, the final order awarding spousal support simply acknowledged that, "[f]or purposes of determining the amounts of alimony[,] the parties have not stipulated to either party's monthly expenses or financial needs." The parties' failure to stipulate their monthly expenses or financial needs simply does not prohibit consideration of such factors in connection with a petition for modification. Indeed, the fact that a petition for modification is proper only upon a substantial change of circumstances necessitates a consideration of those changed circumstances in evaluating whether and to what extent a modification is warranted. *See Metz v. Metz*, 217 W. Va. 468, 473, 618 S.E.2d 477, 482 (2005) (per curiam) ("This Court has also consistently held that the party seeking the modification has the burden of showing that a substantial change of circumstances occurred." (citations omitted)); *Hickman v. Hickman*, 210 W. Va. 608, 610, 558 S.E.2d 607, 609 (2001) (per curiam) ("Our cases have held that a trial court may modify a divorce decree when there has been a substantial change of circumstances which warranted a modification." (citations omitted)); *Goff v. Goff*, 177 W. Va. 742, 745, 356 S.E.2d 496, 499 (1987) ("The general rule is that, upon a showing of substantially changed circumstances, it is within the sound discretion of the trial court to award or modify the amount of child support or alimony payments." (citations omitted)). *See also* W. Va. Code § 48-5-701 ("After the entry of a final divorce order, the court may revise the order concerning spousal support or the maintenance of the parties and enter a new order concerning the same, as the circumstances of the parties may require.").

12

Finally, the need to consider the particular circumstances of the parties in considering modification of an award of spousal support was recognized when this Court observed that,

> [i]n fixing the amount of spousal support, if any, to be ordered where modification is requested . . . the courts must also be guided by the specific list of factors set forth by the West Virginia Legislature for determining spousal support in the original instance, pursuant to West Virginia Code § 48-6-301 (2001) [(Repl. Vol. 2014)].

*Lucas v. Lucas*, 215 W. Va. 1, 8, 592 S.E.2d 646, 653 (2003) (footnote omitted).[1] Thus, for the forgoing reasons, I respectfully concur. I am authorized to state that Chief Justice Workman joins me in this concurring opinion.

---

[1]The statutory list of factors referred to in *Lucas v. Lucas*, 215 W. Va. 1, 8, 592 S.E.2d 646, 653 (2003), states, as follows:

The court shall consider the following factors in determining the amount of spousal support, child support or separate maintenance, if any, to be ordered under the provisions of parts 5 [§§ 48-5-501 et seq.] and 6 [§§ 48-5-601 et seq.], article five of this chapter, as a supplement to or in lieu of the separation agreement:

(1) The length of time the parties were married;

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of article seven of this chapter, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive spousal support, child support or separate maintenance: Provided, That for the purposes of determining a spouse's ability to pay spousal support, the court may not consider the income generated by property allocated to the payor

spouse in connection with the division of marital property unless the court makes specific findings that a failure to consider income from the allocated property would result in substantial inequity;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) Whether either party has foregone or postponed economic, education or employment opportunities during the course of the marriage;

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking spousal support, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(11) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;

(12) The anticipated expense of obtaining the education and training described in subdivision (10) above;

(13) The costs of educating minor children;

(14) The costs of providing health care for each of the parties and their minor children;

(15) The tax consequences to each party;

(16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(17) The financial need of each party;

(18) The legal obligations of each party to support himself or herself and to support any other person;

(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and

(20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of spousal support, child support or separate maintenance.

W. Va. Code § 48-6-301(b) (2001) (Repl. Vol. 2014).